PEOPLE, PLAINTIFF AND APPELLEE, v. LLADÓ, DEFENDANT AND APPELLANT.

APPEAL from the First District Court of San Juan in a Prosecution for Murder.

No. 2310.—Decided December 19, 1924.

GRAND JURY—INDICTMENT—DRAWING OF GRAND JURY—SUMMONING ACCUSED—
CHARGE OF DISTRICT ATTORNEY.—When a grand jury investigates a crime concerning which no charge by the district attorney had been submitted to them and find grounds sufficient to indict a person they may direct the district attorney to present to them a form of indictment and may endorse it as a true bill, although the accused may not have been summoned for the drawing of the grand jury that investigated his case, and such investigation need not be submitted to another grand jury.

EVIDENCE—OPINION OF WITNESS.—The following cross-question to a government witness was held to be inadmissible: "If a witness preceding you had said that the accused was on the Mabelén road and not on the road of the plantation, would you agree with him?"

ID.—EXPERT ON FIREARMS.—A member of the police force who for a long time had engaged in target practice with firearms is qualified to testify as to whether or not a revolver has been discharged recently.

ID.—ECCHYMOSIS—MEDICAL EXPERT.—A physician is the only competent witness to prove that a person showed ecchymosis shortly after a hand-to-hand fight.

INSTRUCTION TO JURY—REASONABLE DOUBT.—In its charge the court defined reasonable doubt as follows: "A reasonable doubt is that condition of a case in which after a comparison and consideration of all of the evidence the jury are left in such a mental condition that they are not convinced that the charge is true." Held: That this instruction might have been better, but it does not warrant a reversal and a new trial.

ID.—SELF-DEFENSE.—When the court has instructed the jury on self-defense and its necessary elements it is not error to refuse the defendant the following instruction: "An assault with a deadly weapon raises the presumption of an intent to kill and justifies the assailed in using a deadly weapon for defending himself."

The facts are stated in the opinion.

Mr. R. Díaz Collazo for the appellant.

Mr. José E. Figueras, Fiscal, for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Jaime Lladó was indicted for the crime of murder and

a jury having found him guilty of voluntary manslaughter, he took the present appeal. The first ground of appeal is that the trial court erred in overruling his motion to quash the indictment for the reason that he was not cited for the drawing of the grand jury who found the indictment against him and therefore was unable to challenge the panel or some of the jurors.

Section 2 of the Act establishing the grand jury in Porto Rico, approved by our Legislature on June 18, 1919, provides that at each judicial term the court, whenever in its opinion the same may be necessary, shall order the drawing by lot of twenty names from the regular list of jurors for the formation of the grand jury to act during the term. Section 3 directs that the drawing of the grand jury shall be carried out in open court by the secretary of the court, after having cited the district attorney and the accused persons whose cases are to be submitted to the grand jury for investigation, at least five days in advance of the date of the drawing. Sections 4 to 10 allow the accused persons so cited to challenge the entire panel or any individual jurors. Section 21 requires the district attorney to present to the grand jury all charges for crimes cognizable by them, in the form of indictments. Section 24 authorizes the grand jury to investigate any crime cognizable by them within the jurisdiction of the district court in which they are acting, although no charge may have been submitted to them by the district attorney. Section 25 prescribes that if in any case the grand jury find cause to indict, they shall endorse the indictment submitted by the district attorney as a true bill and that if no charge has been submitted by the district attorney, the grand jury shall direct him to prepare an indictment, and when so prepared it shall be properly endorsed. Section 52 provides that the indictment must be quashed by the court on motion of the accused made at the time of the arraignment if, among other cases,

it was not found, endorsed or presented as prescribed in the Act.

The crime with which the appellant was charged was committed while the grand jury were in session. They were informed of it, investigated it and directed the district attorney to submit a form of indictment which they endorsed as a true bill. Therefore the crime was not investigated by the district attorney and for this reason the appellant was not cited for the drawing of the grand jury, and he alleges now that it would be unjust that in cases in which the district attorney submits the charges to the grand jury the accused should have a right to be cited and to make challenges, while when the grand jury make the investigation without an indictment submitted by the district attorney they should have no such right, and that in order to avoid such injustice section 25 should be construed as meaning that when the investigation is made by the grand jury the result should be submitted to another grand jury after summoning the accused.

There is no doubt that in accordance with the statutes cited the accused persons whose cases the district attorney intends to submit to the grand jury should be summoned for the drawing of the grand jury; that they may make challenges, and that the statute does not recognize that right when the investigation is made by the grand jury for the simple reason that when the drawing is made there is no charge against anybody who could be summoned. Perhaps this discrimination is not fair, but it infringes no constitutional right of the accused and the Legislature had the power to make that distinction. Before the Grand Jury Act was passed informations were filed in the courts on the sole investigation and opinion of the district attorney, and when the said law was enacted the right to challenge the grand jury was given only to the accused persons whose cases were submitted to the grand jury by the district attorney, but not to those whose cases were investigated by

the grand jury without a form of indictment submitted by the district attorney, they remaining, therefore, in the same situation as was any accused before the Act was passed, with the only difference that the indictment was the result of the investigation and conclusion of the grand jury instead of those of the district attorney. As to the contention that section 25 should be construed to mean that when the investigation is made by the grand jury the result should be submitted to another grand jury in order that the accused may be summoned and have an opportunity to make challenges, it will suffice to say that this court has no authority to add to the law provisions which are not contained therein, for the said section prescribes positively that when no indictment has been submitted by the district attorney the grand jury shall direct him to prepare one and shall endorse it, and this precludes us from holding that it should be considered by another grand jury. In substance, when the grand jury investigate a crime without an indictment submitted by the district attorney and find grounds sufficient to indict they may direct the district attorney to submit an indictment and may endorse it as a true bill, although the accused may not have been summoned for the drawing of the grand jury that investigated his case, and such investigation need not be submitted to another grand jury.

Another ground of appeal is that the trial court erred in not allowing a government witness to answer a question put to him by counsel for the defendant. The witness had said repeatedly that he saw the defendant leading some cows along a road of a certain plantation and not along the Mabelén road and was asked the following question: "If a witness preceding you had said that the defendant was on the Mabelén road and not on the road of the plantation, would you agree with him?"

It is true that on cross-examination great latitude is **allowed in order to test the credibility of the witness, but**

the cross-question rejected was not so intended, the purpose being to have the witness express his opinion concerning what another witness had stated; therefore, it was not admissible, not even, as alleged by the appellant, to show the jury a contradiction between his statement and that of another witness, as it is for the jury and not for the witness to say whether there is any contradiction and which statement is true.

It is also assigned as error that Miguel Martínez was permitted to testify as an expert on firearms without properly qualifying as such, and also that he was not allowed to answer a question as to whether the defendant showed ecchymosis.

Miguel Otero died as a result of a bullet wound in his head and he also had another in one thigh. At the autopsy a Smith revolver with an empty shell was found in a pocket of his trousers.

Miguel Martínez was the chief of police of the district in which the crime was committed and testified that the defendant voluntarily said to him that while he was pasturing some cows on the Mabelén road belonging to the San Vicente Central, Miguel Otero arrived on horseback and then turned as if to depart; that while the defendant had his hand in his pocket in which he had a pistol Otero jumped from the horse and caught hold of him behind his back, whereupon they engaged in a fight and fell to the ground, in which position he drew his pistol and shot his assailant; that then he succeeded in getting out of the ditch into which he had fallen and fired another shot at him, and that he tried to fire another shot but the pistol failed; that he and Otero had previously had some words because Otero did not want him to graze his cows at that place. The witness then testified that the defendant delivered the pistol to him; that it was of the ordinary kind that come through the mail, and that he passed it to the district attorney. He identified it at the trial.

In the course of his testimony this witness said that he was an expert on firearms; that he examined the Smith revolver and concluded that it had not been fired on the day on which Otero was shot; that he had been on the police force for thirteen years and had given much time to target practice and the study of firearms; that after target practice with his revolver he had observed the effect that it had on the arm and could distinguish perfectly between an arm recently fired and one fired long before; that when one has been recently fired it smells of powder and if a piece of cloth is introduced it brings out some powder; that the revolver then looks cleaner than one not fired for a long time, and that he had no experience with powder and knew no chemistry. The appellant relies on these last statements of the witness in contending that he was not qualified to testify as an expert.

We are of the opinion that in view of all of the testimony of the witness concerning his knowledge of revolvers and similar firearms he was qualified to testify as an expert that the shot fired from the Smith revolver found upon the person of the deceased was not recent but old. But even if this were not the case, it is of little importance in this case whether or not the shot was fired recently, for no witness testified at the trial that Otero fired any shot at the appellant.

The said witness also testified that the accused was very nervous when he arrested him; that his shirt was torn and his skin was visible; that he showed him the place and he pressed the skin between his fingers; that it reddened but was simply irritated and he saw no wound. The following cross-question was put to this witness and rejected by the court: "Have you seen many persons after a fight? Have you, in the discharge of your duties as a policeman, interfered with people fighting? This bruise on the defendant * * *?" The appellant alleges that this cross-question was pertinent because it was intended to show to the jury

that the witness contradicted himself, for he had testified that defendant's skin was merely irritated, and also that it was not a question requiring an expert answer. Whether or not the defendant showed ecchymosis was a matter to be established by the testimony of a medical expert, for this was the way to controvert the statement of the witness as to whether the skin was merely irritated or bruised; inasmuch as the meaning of the words is not commonly known to every witness. Besides, such expert evidence was produced by the defendant and therefore the error assigned was not committed.

We have to consider now only the last error assigned with reference to the charge of the court to the jury and to an instruction asked for by the defendant and refused by the court.

The only instruction objected to was that on reasonable doubt, as follows: "A reasonable doubt. is that condition of a case in which after a comparison and consideration of all of the evidence the jury are left in such a mental condition that they are not convinced that the charge is true." This instruction perhaps might have been better, but we can not say that it warrants a reversal of the judgment and a new trial.

The instruction asked for by the defendant and refused by the court was as follows: "An assault with a deadly weapon raises the presumption of an intent to kill and justifies the assailed in using a deadly weapon for defending himself."

It was not error for the court to refuse to give that instruction, inasmuch as the judge had fully charged the jury on self-defense and its necessary elements.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Hutchison and Franco Soto concurred.